UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cv-26005

REA.DEEMING BEAUTY, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

    Defendants.

_____/

## COMPLAINT

Plaintiff REA.DEEMING BEAUTY, INC. ("Plaintiff" or "REA.DEEMING BEAUTY"), by and through undersigned counsel, hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"):

### INTRODUCTION

1. This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's registered trademarks covered by U.S. Trademark Registration Nos. 2945105, 4719164, 4719170, 4719175, and 5956097 (the "REA.DEEMING BEAUTY Trademarks"). The registrations are valid, subsisting, and in full force and effect. A true and correct copy of the federal

---

[1] Plaintiff is attaching a redacted version of the Schedule A and intends to promptly file a motion to file the full unredacted Schedule A under seal once the Judge is assigned.

trademark registration certificates for the REA.DEEMING BEAUTY Trademarks are attached as **Exhibit 1**.

2. Defendants are improperly advertising, marketing and/or selling unauthorized and noncompliant products by reference to marks identical or substantially identical to the REA.DEEMING BEAUTY Trademarks (the "Counterfeit Products").

3. Defendants have created numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including but not limited to the platforms Amazon, DHgate, eBay, Etsy, Shein, Temu, Walmart, and Wish (collectively, the "Marketplace Platforms").

4. Defendants design the online marketplace accounts to appear to be selling Plaintiff's genuine products properly bearing, using, and utilizing Plaintiff's Trademarks (the "REA.DEEMING BEAUTY Products") while selling inferior imitations of such products.

5. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

6. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of the REA.DEEMING BEAUTY Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products.

7. As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishing of its valuable trademarks. Plaintiff therefore seeks injunctive and monetary relief.

8. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

9. In addition, each Defendant has offered to sell and ship and/or sold and shipped infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

10. This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

11. Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and FRCP § 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this judicial District, for example:

   a. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in

3

Florida, in this Judicial District, through accounts with online marketplace platforms such as Amazon, DHgate, eBay, Etsy, Shein, Temu, Walmart, and Wish (collectively, the "Marketplace Platforms") as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts that each Defendant operates ("Defendant Internet Stores"), uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra)* and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the United States, including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

      b.    Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

12.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400 because Defendants have committed acts of trademark infringement in this Judicial District and do substantial business in the Judicial District.

**THE PLAINTIFF**

13.    Plaintiff REA.DEEMING BEAUTY, Inc. is a Corporation organized under the laws of the State of California and is the registered owner of the REA.DEEMING BEAUTY Trademarks (referred to above, copies of federal registrations attached as Exhibit 1).

14.    Plaintiff is a leading supplier and manufacturer of cosmetics and makeup products,

4

such as the Beauty Blender which has earned an international reputation for quality, reliability and value. Plaintiff is credited for many breakthroughs that have occurred in the industry, including its REA.DEEMING BEAUTY Products.

## THE REA.DEEMING BEAUTY PRODUCTS

15. Plaintiff is the official source of REA.DEEMING BEAUTY Products in the United States, which include, among others, the Beauty Blender makeup sponge, the Power Pocket Puff, a powder puff sponge, and the Blender Defender, a makeup sponge carrying case.



*Exemplary Images of Plaintiff's Product*

16. Since at least 2004, the REA.DEEMING BEAUTY Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the REA.DEEMING BEAUTY Trademarks in the industry and to consumers. Plaintiff's promotional efforts include—by way of example but not

limitation—through substantial marketing and advertising on the internet and social media.

17. The REA.DEEMING BEAUTY Trademarks (attached as Exhibit 1) are distinctive and identify the merchandise as goods from Plaintiff. The registration for the REA.DEEMING BEAUTY Trademarks constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use that trademark pursuant to 15 U.S.C. § 1057(b).

18. The REA.DEEMING BEAUTY Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1), and has been continuously used and never abandoned.

19. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the REA.DEEMING BEAUTY Trademarks. As a result, products bearing the REA.DEEMING BEAUTY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

20. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

21. Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

## TEMPORARY REDACTION OF DEFENDANTS' IDENTITIES

22. Pursuant to S.D. Fla. Local Rule 5.4(b)(1), Plaintiffs are attaching a redacted version of the Schedule A contemporaneously with this Complaint. This redacted Schedule A, which identifies Defendants by Doe number and platform, prevents premature disclosure of Defendants' full identities and avoids alerting counterfeiters who may monitor federal court

dockets and destroy evidence or transfer assets before the Court has the opportunity to act on Plaintiff's anticipated request for *ex parte* relief.

23. Temporary redaction and sealing of the unredacted Schedule A is consistent with the procedures previously approved in this Court. *See, e.g.*, *Complaint* at 18, *Tottenham Hotspur Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 1:25-cv-20476 (S.D. Fla. Jan. 31, 2025) (showing a redacted Schedule A filed contemporaneously with the initial complaint); *Order Granting Motion to Seal*, *Tottenham Hotspur Ltd.*, No. 1:25-cv-20476 (S.D. Fla. Feb. 3, 2025), Dkt. No. 8 (granting motion to seal after Plaintiff filed a redacted Schedule A contemporaneously with the initial complaint); *see also A.T. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 25-cv-21168, 2025 WL 2506612, at *1–2 (S.D. Fla. Mar. 18, 2025) (authorizing a complaint with initially restricted information to prevent premature notice to counterfeiters preserve the effectiveness of injunctive relief).

24. Once the Court's filing system permits the Plaintiff to do so after a Judge is assigned to this case, Plaintiff will promptly file a motion to file under seal the unredacted version of the Schedule A, which identifies the full names, online marketplace store URLs, and other identifying information of the Defendants. *See A.T.*, 2025 WL 2506612, at *2 (noting temporary restriction within a complaint was justified where the plaintiff "assure[d] the Court that it will proceed under [a non-limited complaint] once the defendants are served and their accounts are restrained").

## THE DEFENDANTS' UNLAWFUL CONDUCT

25. The success of the REA.DEEMING BEAUTY Products has resulted in significant infringement and counterfeiting.

26. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Amazon, DHgate, eBay, Etsy, Shein, Temu,

7

Walmart, and Wish, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit REA.DEEMING BEAUTY Products to consumers in this Judicial District and throughout the United States.

27. Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

28. On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine REA.DEEMING BEAUTY Products.

29. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

30. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

31. Plaintiff has not licensed or authorized Defendants to use the REA.DEEMING

BEAUTY Trademarks, and none of the Defendants are authorized retailers of genuine REA.DEEMING BEAUTY Products.

33. On personal knowledge and belief, Defendants deceive unknowing consumers by using the REA.DEEMING BEAUTY Trademarks without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the Counterfeit Products themselves.

33. On personal knowledge and belief, Defendants also deceive unknowing consumers by using the REA.DEEMING BEAUTY Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for REA.DEEMING BEAUTY Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine REA.DEEMING BEAUTY Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell counterfeit REA.DEEMING BEAUTY Products into this District.

34. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

35. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or

states.

36. And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.

37. On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

38. In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

39. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

40. In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under

User Accounts once they receive notice of a lawsuit.[2]

41. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[3]

42. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

43. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

44. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

45. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the REA.DEEMING BEAUTY Trademarks in connection with the advertisement, distribution, offering for sale, sale and import of Counterfeit Products into

---

[2] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited December 16, 2025).

[3] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited December 16, 2025).

the United States and Florida over the Internet.

46. Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell Counterfeit Products into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## FIRST CAUSE OF ACTION
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

47. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–46 of this Complaint.

48. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered REA.DEEMING BEAUTY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The REA.DEEMING BEAUTY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the REA.DEEMING BEAUTY Trademarks.

49. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the REA.DEEMING BEAUTY Trademarks without Plaintiff's permission.

50. Plaintiff is the registered owner of the REA.DEEMING BEAUTY Trademarks and official source of REA.DEEMING BEAUTY Products. The United States Registration for the REA.DEEMING BEAUTY Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the REA.DEEMING BEAUTY Trademarks and are willfully infringing and intentionally using counterfeits of the

REA.DEEMING BEAUTY Trademarks. Defendants' willful, intentional, and unauthorized use of the REA.DEEMING BEAUTY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.



*Exemplary Counterfeit Products Sold on Defendant Internet Store Infringing on Plaintiff's Registered Trademark Reg. No. 5,956,097[4]*

51. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

52. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit REA.DEEMING BEAUTY Products.

53. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known REA.DEEMING BEAUTY Trademarks.

---

[4] See Exhibit 1 to Complaint.

13

## SECOND CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

54. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–46 of this Complaint.

55. Defendants' promotion, marketing, offering for sale, and sale of counterfeit REA.DEEMING BEAUTY Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit REA.DEEMING BEAUTY Products by Plaintiff.

56. By using the REA.DEEMING BEAUTY Trademarks in connection with the sale of counterfeit REA.DEEMING BEAUTY Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit REA.DEEMING BEAUTY Products.

57. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit REA.DEEMING BEAUTY Products to the general public under 15 U.S.C. §§ 1114, 1125.

58. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them

be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.    using the REA.DEEMING BEAUTY or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine REA.DEEMING BEAUTY product or is not authorized by Plaintiff to be sold in connection with the REA.DEEMING BEAUTY Trademarks;

    b.    passing off, inducing, or enabling others to sell or pass off any product as a genuine REA.DEEMING BEAUTY product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the REA.DEEMING BEAUTY Trademarks;

    c.    committing any acts calculated to cause consumers to believe that Defendants' counterfeit REA.DEEMING BEAUTY Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff.

    d.    further infringing the REA.DEEMING BEAUTY Trademarks and damaging Plaintiff's goodwill;

    e.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff trademarks, including the REA.DEEMING BEAUTY Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

    f.    using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Internet Stores, or any other domain

name or Online Marketplace Account that is being used to sell or is the means by which Defendants could continue to sell counterfeit REA.DEEMING BEAUTY Products; and

    g. operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the REA.DEEMING BEAUTY Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine REA.DEEMING BEAUTY Product or not authorized by Plaintiff to be sold in connection with the REA.DEEMING BEAUTY.

  2. Entry of an Order that Amazon, DHgate, eBay, Etsy, Shein, Temu, Walmart, and Wish and any other online marketplace account provider:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

    c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

  3. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the REA.DEEMING BEAUTY Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

  4. In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the

REA.DEEMING BEAUTY Trademarks;

      5.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and

      6.      Award any and all other relief that this Court deems just and proper.

Dated: December 19, 2025              Respectfully submitted,

                                                    **BOIES SCHILLER FLEXNER LLP**

                                                    */s/ Nicole Fundora*
                                                    Nicole Fundora (FL Bar No. 1010231)
                                                    100 SE 2nd Street, Suite 2800
                                                    Miami, FL 33131
                                                    Tel: (305) 539-8400
                                                    nfundora@bsfllp.com

                                                   *Counsel for Plaintiff REA.DEEMING BEAUTY, INC.*